UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ANTHONY B.,            )
                       )
        Plaintiff      )
                       )
v.                     )   No. 2:18-cv-00376-JHR
                       )
ANDREW M. SAUL,        )
Commissioner of Social Security,[1] )
                       )
        Defendant      )

## MEMORANDUM DECISION[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis, *inter alia*, that the ALJ's residual functional capacity ("RFC") determination is unsupported by substantial evidence because he interpreted raw medical evidence, thereby exceeding the bounds of his competence as a layperson, in adopting physical limitations beyond those found by agency nonexamining consultants who did not have the benefit of review of evidence bearing on the plaintiff's cervical degenerative disc disease ("DDD") and development of bilateral shoulder impingement syndrome. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 9. I agree and, accordingly, vacate the commissioner's

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 19.

1

decision and remand this case for further proceedings consistent herewith. I need not and do not reach the plaintiff's remaining points of error.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2015, Finding 1, Record at 129; that he had the severe impairments of DDD, affective disorder, asthma, bilateral shoulder impingement, alcohol dependency, and gastroesophageal reflux disease, Finding 3, *id.*; that he had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he could, *inter alia*, lift and carry 10 pounds frequently and 20 pounds occasionally, sit, stand, or walk for six hours in an eight-hour workday, push and pull as much as he could lift and carry, occasionally reach overhead with the left and right upper extremities, and frequently do all other reaching with the left and right upper extremities, Finding 5, *id.* at 131; that, considering his age (45 years old, defined as a younger individual, on his alleged disability onset date, December 5, 2013), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 138; and that he, therefore, had not been disabled from December 5, 2013, his alleged onset date of disability, through the date of the decision, August 18, 2017, Finding 11, *id.* at 139-40.

On July 19, 2018, the Appeals Council reviewed the decision and, apart from finding that the plaintiff had an additional severe impairment of attention deficit hyperactivity disorder, adopted the findings of the ALJ, *see id.* at 5-8, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

On November 11, 2015, agency nonexamining consultant Archibald Green, D.O., concluded at the initial level of review that the medical evidence of record supported a finding that the plaintiff had severe impairments of DDD and dysfunction of major joints. *See* Record at 61. Dr. Green indicated that the plaintiff could meet the demands of light work but was limited to, as is pertinent here, occasional overhead reaching with the left upper extremity ("due to rotator cuff injury") and frequent overhead reaching with the right upper extremity ("due to DDD of C [cervical] spine"). *Id*. at 63-64. On July 14, 2016, at the reconsideration level of review, agency nonexamining consultant Jose Gonzales-Mendez, M.D., affirmed Dr. Green's assessment, noting that the medical evidence of record, which contained "no new allegations or alleged worsening of symptoms[,]" did "not constitute a base to add physical limitations." *Id*. at 114.

In assessing the plaintiff's physical RFC, the ALJ gave "great weight" to the opinions of Drs. Green and Gonzales-Mendez, explaining:

> The State agency medical consultants' physical assessments . . . are generally well supported and consistent with the record as a whole. The evidence received since they were rendered do[es] not document significant changes in complaints, signs, symptoms, or treatment, and could not reasonably be expected to significantly alter these assessments. They have therefore been given great weight by the undersigned.

*Id.* at 137.

Assuming, without deciding, that the ALJ supportably determined that the evidence unseen by Drs. Green and Gonzalez-Mendez did not undermine his reliance on their assessments, he nonetheless deviated from those assessments to the extent that he found a severe impairment of bilateral shoulder impingement and assessed a limitation to *occasional* overhead reaching with *both* upper extremities and *frequent* reaching with *both* upper extremities in all other planes. *Compare* Findings 3, 5, Record at 129, 131 *with id*. at 64 (assessing limitations of *occasional* overhead reaching with the left upper extremity, *frequent* overhead reaching with the right upper extremity, and *no limitations* in reaching in any other direction with either upper extremity), 114 (adopting the same).

The plaintiff contends, and the commissioner does not dispute, that the ALJ derived these additional limitations by interpreting raw medical evidence postdating the Green and Gonzales-Mendez opinions, *see* Statement of Errors at 7; Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 16) at 7-8, which includes notes from treating provider Stacy Holland, PA-C, dated November 23, 2016,[3] and treating orthopedist Peter J. Dirksmeier, M.D.,

---

[3] In November 2016, the plaintiff complained to PA-C Holland of worse left arm pain than he had experienced before a decompression surgery of both shoulders, with pain radiating down into his forearm and tingling in his hand. *See* Record at 661. PA-C Holland documented decreased extension of the left shoulder and a positive Neer impingement sign and recommended the use of ice and NSAIDs for pain. *See id*. at 662-63.

4

dated February 2, 2017,[4] *see* Record at 661-63, 727-29.[5] At oral argument, the plaintiff's counsel emphasized that the unseen records also include a report of a January 11, 2017, cervical spine MRI pertaining to the C3-4 and C4-5 levels of the plaintiff's cervical spine.[6]

Nonetheless, the commissioner argues (i) that, because the evidence submitted subsequent to the Green and Gonzalez-Mendez opinions showed that the plaintiff had "'the same problems on the right side'" as on the left, the ALJ "appropriately made a commonsense judgment" or, (ii) in the alternative, that the ALJ "effectively" gave the plaintiff "the benefit of the doubt" by assessing an RFC more favorable to him than the medical evidence supported. Opposition at 7 (quoting Record at 752 (treatment note dated January 19, 2016)); *see also, e.g.*, *Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (Although an ALJ is not precluded from

---

[4] Dr. Dirksmeier, who performed a "neck consult" on February 2, 2017, noted tenderness of the trapezius, limited active range of motion of both the right and left shoulders, limited passive range of motion of the left shoulder, positive Hawkin's and Neer's tests of the left shoulder, and limited strength on the left due to diffuse left arm pain, assessing, "Impingement syndrome of shoulder region – Bilateral" as well as degeneration of the cervical intervertebral disc and idiopathic osteoarthritis of both shoulders. Record at 728-29.

[5] Subsequent to Dr. Gonzalez-Mendez's July 2016 review, the plaintiff also submitted records documenting his bilateral shoulder surgery on March 7, 2016, predating Dr. Gonzalez-Mendez's review. *Compare* Record at 665-67 *with id*. at 109 (notation by Dr. Gonzalez-Mendez that no new medical evidence bearing on physical impairments was submitted on reconsideration). The commissioner contends that the plaintiff's failure to submit those records in time for Dr. Gonzalez-Mendez's review precludes his reliance on them on appeal, *see* Opposition at 3-4, a proposition that the plaintiff's counsel disputed at oral argument. I need not resolve this point because I do not rely on the surgical records in analyzing whether remand is required.

[6] While the ALJ noted imaging studies of the cervical spine showing "multi-level [DDD] and foraminal narrowing with straightening of the normal curvature and minimal spinal stenosis at the C6-7 level[,]" citing, *inter alia*, Exhibit B14, which contains the January 11, 2017, MRI report, Record at 135, he did not discuss findings in the 2017 report of "[s]mall left lateral disc protrusion/disc osteophyte complex contribut[ing] to moderate narrowing of the left neural foramen" at the C3-4 level or of an extension of a mild broad-based posterior disc osteophyte complex "into the bilateral lateral recesses resulting in moderate right foraminal stenosis and severe appearing left foraminal stenosis" at the C4-5 level, *id*. at 766. At oral argument, counsel for the commissioner asserted, and the plaintiff's counsel did not dispute, that the 2017 MRI revealed no significant change in the plaintiff's cervical DDD compared with a cervical-spine MRI performed in 2014. However, the plaintiff's counsel noted that, insofar as appeared, neither Dr. Green nor Dr. Gonzalez-Mendez reviewed the report of the 2014 cervical-spine MRI. Indeed, Dr. Green noted review only of a record dated February 18, 2015, indicating a finding of "C [cervical] spine small L [left] lat[eral] herniated disc C6-7 impinging upon C7 root in foramen[,]" *id*. at 60, and counsel for the commissioner conceded at oral argument that it is unclear whether either Dr. Green or Dr. Gonzalez-Mendez reviewed the report of the 2014 MRI of the cervical spine, *see id*. at 521-22.

5

"rendering common-sense judgments about functional capacity based on medical findings," he or she "is not qualified to assess residual functional capacity based on a bare medical record.").

These arguments might have proved persuasive had the ALJ "clarified how []he derived the specific components of h[is] RFC" that deviated from those assessed by Drs. Green and Gonzales-Mendez. *Staples v. Astrue*, Civil No. 09-440-P-S, 2010 WL 2680527, at *4 (D. Me. June 29, 2010) (rec. dec., *aff'd* July 19, 2010); *Lacey A. L. v. Saul*, No. 1:19-cv-00126-GZS, 2020 WL 748645, at *5 (D. Me. Feb. 14, 2020) (rec. dec., *aff'd* Mar. 3, 2020) (remand warranted when ALJ, *inter alia*, "did not adequately explain how he accounted for the severe mental impairments not taken into account by" the agency nonexamining consultant whose opinion he had given great weight). But he did not. *See* Record at 132-38.

The ALJ explained that his prior "detailed factual analysis demonstrate[d] that [his] finding of [RFC] [wa]s essentially consistent with the weight of the objective medical evidence, the treatment required and received, and the weight of the various medical opinions." *Id*. at 138. Yet, nothing in his factual analysis makes clear that the same limitations were appropriate during the relevant period for both the plaintiff's left and right upper extremities, that the appropriate levels of limitation were assessed, or, in the alternative, that he simply gave the plaintiff the benefit of the doubt. *See id*. at 134-36; *Hadley v. Soc. Sec. Admin. Comm'r*, No. 1:16-cv-00568-JAW, 2018 WL 1719705, at *1 (D. Me. Apr. 9, 2018) (rejecting commissioner's argument that ALJ's "'unfortunate wording' and 'awkward language' . . . obscured the reality that she was tacitly giving [the claimant] the benefit of the doubt") (citation omitted).

In support of his argument that the ALJ made a commonsense judgment to assess the same limitations for both the left and right upper extremities, the commissioner quotes a passage from a January 19, 2016, medical record in which Ira M. Parsons, M.D., stated, in the context of

documenting a discussion with the plaintiff about possible shoulder surgery, that the plaintiff had "'the same problems on the right side[.]'" Opposition at 7 (quoting Record at 752). However, insofar as appears, the ALJ did not quote or summarize that passage in his detailed discussion of the medical evidence of record bearing on the plaintiff's shoulder and neck conditions. *See* Record at 134-36.

While courts overlook an "arguable deficiency in opinion-writing technique" if not outcome-determinative, *see Bryant ex rel. Bryant v. Apfel*, 141 F.3d 1249, 1252 (8th Cir. 1998) (citation and internal punctuation omitted), reversal and remand are warranted when failures to explicate and/or even address material issues prevent a reviewing court from concluding that the ALJ reached a supportable result *via* an acceptable analytical pathway, *see*, *e.g.*, *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.") (citations omitted). That is the case here. The court cannot discern that the ALJ either made a commonsense judgment regarding additional upper-extremity limitations or gave the plaintiff the benefit of the doubt with respect to them.

This implicates the commissioner's final argument against remand: that, "[e]ven if the ALJ improperly interpreted raw medical evidence, any error was harmless" because the plaintiff "has not pointed to any evidence of further limitation on his ability to use his right arm, as is his burden to do." Opposition at 8 (citing *Davis v. Colvin*, No. 1:14-cv-343-JHR, 2015 WL 3937423, at *4-5 (D. Me. June 25, 2015); *Purdy v. Colvin*, No. 1:15-cv-330-JDL, 2016 WL 2770520, at *5 (D. Me. May 13, 2016) (rec. dec., *aff'd* Sept. 13, 2016), *aff'd sub nom. Purdy v. Berryhill*, 887 F.3d 7 (1st Cir. 2018)). However, both cases are distinguishable.

In *Davis*, the ALJ explained that, although "[n]o medical practitioner of record ha[d] expressed an opinion regarding the claimant's physical functional capacity" and one could reasonably infer from the evidence of record that she had "recovered well from her surgery" and was "able to perform at least light work[,]" the ALJ had assessed physical limitations "[t]o give [the claimant] the benefit of any doubt[.]" *Davis*, 2015 WL 3937423, at *4 (citations and internal quotation marks omitted). In that context, the court held that, because the claimant had not "point[ed] to any evidence that there was any further limitation on her ability to use her right upper extremity," the ALJ, in giving her "the benefit of any doubt," had assigned an RFC "more favorable to . . . her than the evidence would otherwise support." *Id*. (citations and internal quotation marks omitted). In this case, by contrast, the ALJ gave great weight to the opinions of two agency nonexamining consultants who had not had the benefit of review of later-submitted evidence, but deviated from their findings without stating that he had given the plaintiff the benefit of the doubt or otherwise explaining why he did so.

In *Purdy*, the claimant argued that, although the ALJ had adopted the RFC assessment of agency nonexamining consultants *in toto*, she erred in so doing because she found different severe mental impairments than had the consultants. *See Purdy*, 2016 WL 2770520, at *5. The court rejected that argument as unsupported by citation to authority, adding, "if the RFC included the limitations found by the state-agency psychologists to exist, whatever their cause, the [claimant] has not been harmed." *Id*. In that context, the court observed that the claimant had not identified "any functional limitations that should have been added to her RFC arising from the additional severe impairments included in the [ALJ]'s opinion" and "would also have to demonstrate that these functional limitations would change the outcome of her claim" to warrant remand. *Id*. Again, by contrast, in this case the ALJ gave great weight to the opinions of two agency

nonexamining consultants who had not had the benefit of review of later-submitted evidence, but deviated from their findings without explaining why he did so.

The ALJ's RFC finding, accordingly, is unsupported by substantial evidence. That, in turn, undermined his reliance at Step 5 on the testimony of a vocational expert that a person with the stated RFC could perform work existing in significant numbers in the national economy, *see* Record at 138-39, warranting remand, *see, e.g.*, *Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of a vocational expert are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record).

Remand, accordingly, is warranted on this basis.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **VACATED**, and the case is **REMANDED** for proceedings consistent herewith.

Dated this 20th day of March, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge